IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THE BOEING COMPANY, a Delaware corporation, | ) ) ) | |
| Plaintiff, | ) ) | No. 09 C 2213 |
| v. | ) ) | Judge Robert W. Gettleman |
| INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (UAW) and its LOCALS 952 and 1558, | ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In February 2005 plaintiff Boeing Company ("Boeing") decided to sell its plants in Tulsa and McAlester, Oklahoma to a company now known as Spirit AeroSystems, Inc. ("Spirit"). The hourly production and maintenance employees at the two facilities are represented by defendant UAW pursuant to a collective bargaining agreement effective May 15, 2003 through October 14, 2007, renewable for one year periods thereafter (the "CBA"). To keep the workforce largely intact during the sale, Boeing urged its employees to apply for employment with Spirit before the sale closed on June 16, 2005.

Spirit offered employment to 738 of the 795 bargaining unit employees at the two plants. Some employees elected to retire prior to or upon close of the sale, some elected not to apply for a position at Spirit, some employees who were offered jobs at Spirit elected not to take them, and some applied to Spirit but were not offered jobs.

Boeing classified and treated those employees who accepted employment at Spirit as "terminated due to divestiture." These employees continued to work at the same facility. Spirit recognized all accrued sick leave and vacation pay balances as well as their length of service

with Boeing for purposes of sick leave and vacation pay accrued under Spirit's policies. Spirit recognized the employees' Boeing seniority and created a "mirror" pension plan to which Boeing transferred and froze the pension assets and liabilities from its plan for those employees hired by Spirit.

Boeing employees who did not apply to Spirit or did not accept Spirit's offers of employment were treated by Boeing as having quit and terminated. Employees who applied with Spirit but were not offered positions were treated by Boeing as having been "laid-off" and have been treated as such under the CBA.

On July 21, 2005, the UAW filed a grievance with Boeing challenging Boeing's classification of any of its employees at the two facilities as terminated. Of particular import to UAW is that the treatment of employees as terminated resulted in the loss of the right to maintain seniority until age 55, and to retire from Boeing with an early pension and lifetime retiree health care. Each Boeing employee who was at least 50 years old at the time of the sale with ten or more years of Boeing service suffered that loss. Boeing denied the grievance, and after following the grievance procedures in accordance with the provisions in the CBA, Boeing informed UAW that it refused to submit the dispute to arbitration. UAW filed suit to compel arbitration and the parties settled by agreeing to arbitrate and to submit to the arbitrator the issue of whether the dispute was arbitrable.

The arbitrator issued his award on July 21, 2008 (the "2008 Award"). In that 29 page opinion the arbitrator first found that the dispute was substantively arbitrable under the CBA. He then determined the issues to be arbitrated as: (1) whether the grievance was arbitrable; and (2) whether Boeing violated the CBA by terminating the seniority of bargaining unit employees

2

who were either hired by Spirit, declined offers of employment with Spirit, or did not apply for employment with Spirit and, if so, the appropriate remedy.

The 2008 Award sustained the grievance and found that Boeing had breached the CBA by classifying members as terminated or resigned, agreeing with UAW's position that by not classifying the employees as laid-off Boeing had terminated them without just cause. To remedy the violation, the arbitrator ordered Boeing to "reinstate the seniority of the employees and afford them the benefits appurtenant thereto." The arbitrator left it to the parties to determine what benefits were "appurtenant" to laid-off status, but retained jurisdiction for 90 days "solely to resolve disputes with respect to the remedy." Boeing disagreed with the arbitrator's decision but acknowledges that it has no legal ground to contest it. Therefore, the arbitrator's decision that Boeing breached the CBA by classifying the employees as terminated is final and uncontested.

As a result of the award, Boeing restored the affected member's seniority and recognized their preferential reinstatement rights. Because Boeing and UAW could not come to agreement on what benefits were "appurtenant" to laid-off status, UAW requested supplemental proceedings before the arbitrator to resolve the dispute as to the appropriate relief.

After hearing argument and reviewing supplemental briefs, the arbitrator issued a supplemental opinion on March 5, 2009 (the "2009 Award"). In the supplemental proceeding Boeing argued that any remedy beyond reinstatement of the employee's seniority was beyond the arbitrator's jurisdiction. According to Boeing, all benefits are covered by ERISA-governed employee benefit plans, and that pursuant to those plans eligibility is solely within the province of the Plan Administrator. Because those plans were incorporated into the CBA, Boeing argued

that the CBA assigned all benefit determinations to the Plan Administrator, to be made in accordance with the procedures in the plan and the requirements of ERISA. With respect to those Boeing employees who accepted positions at Spirit, Boeing argued that because the pension assets and liabilities were lawfully transferred, the members were no longer "participants" in the retirement plan (or any Boeing plan) and thus could not become eligible for retirement benefits.

The Arbitrator disagreed with Boeing's position, indicating in the 2009 order that his intent in the initial award was to "place the affected employees in the same status as those employees who had applied for work at Spirit but were not offered employment. Those employees were coded as laid-off and treated as such under the terms of the Agreement." The arbitrator rejected Boeing's argument that all that need be done to effect the arbitrator's intent was to give the affected employees "the right to file a claim for benefits as a laid-off employee and to have it ruled on by the Plan Administrator under the procedures established in the plan" as insufficient, because it was "a foregone conclusion that the employees are no longer considered as participants in the plan and, therefore, are ineligible for the plans' benefits."

Boeing was required to provide benefits under the CBA. It could establish an ERISA-qualified benefit plan to provide the benefits, but the obligations to provide the benefits remain with Boeing. Consequently, the arbitrator found that "if the employees are denied benefits by the Plan Administrator solely because they are not participants, and the reason they are not participants is solely because of [Boeing's] breach of the collective bargaining agreement when it terminated their Boeing employment, then [Boeing] must assume the liability for the denied benefits."

4

To effect this remedy, the arbitrator required the affected employees who sought benefits covered by the Boeing plan to first make application to the Plan Administrator. If the Plan Administrator denied benefits solely because the employee is not a participant in the plan and such non-participation is the result of the employee being improperly classified as having been terminated and/or because of the transfer of plan assets and liabilities to Spirit, then Boeing shall become obligated to provide those benefits that would have been afforded by the plan, or their equivalent. In addition, to prevent a windfall to those employees who had accepted a position at Spirit (and thus were covered under the "minor" Spring plan, the arbitrator required that any pension received from Boeing is subject to reduction of any payments received under the Spirit plan attributed to the transferred Boeing account (the "set-off").

In the instant case, Boeing has moved to confirm that portion of the 2009 Award that requires the affected employees to first file a claim for benefits with the Plan Administrator, and to vacate the portion of the award that requires Boeing to provide the benefits if the Plan Administrator denied claims based on the applicants no longer being participants in the plan because of their improper termination and/or the transfer of pension assets to Spirit. Boeing also seeks to vacate the set-off crafted to avoid the windfall to the affected members who took a position with Spirit. In response, the UAW has moved to confirm both the 2008 and 2009 Awards.

As an initial matter, Boeing has not challenged the 2008 Award that determined that the grievance was arbitrable and that Boeing had breached the CBA. Therefore, the 2008 Award is confirmed. What Boeing does challenge is the relief ordered by the arbitrator in the 2009

Award. Boeing argues that the arbitrator went beyond his authority in fashioning the ordered relief.

An arbitrator's award under a collective bargaining agreement "is legitimate only so long as it draws its essence from the collective bargaining agreement." United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960). What that means is that an award is valid provided it is an attempt to interpret the CBA rather than to apply the arbitrator's own ideas of right and wrong. "An arbitrator is confined to an interpretation and application of the CBA; he does not sit to dispense his own brand of industrial justice." Id.

The instant CBA, like most such agreements, provides little guidance as to the extent of the arbitrator's remedial powers. Article XXI of the CBA, upon which the arbitrator relied, does provide that "either party hereto shall be entitled to require specific performance of the provisions of this Agreement." Nonetheless, Boeing argues that because the CBA also incorporates the plans, and the claim appeals procedures contained in those plans, the arbitrator went beyond any remedy contemplated by the CBA and injected himself into the benefit claims procedures. The court disagrees.

As the Supreme Court made clear in the United Steelworkers, 363 U.S. at 597:

> When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There is the need for flexibility in reading a wide variety of situations. The draftsman may never have thought of what specific remedy should be afforded to meet the particular contingency.

Even the case on which Boeing relies, Miller Brewing Co. v. Brewery Workers Local Union No. 9, 739 F.2d 1159, 1163 (7th Cir. 1984), indicates that "collective bargaining agreements often say little or nothing about the arbitrator's remedial powers; yet it cannot be that

he has none; and since he derives all his powers from the agreement, the agreement must implicitly grant him remedial powers when there is no implicit grant." In the instant case, as the arbitrator noted, the CBA provides the employees with the benefits sought. There is no dispute that Boeing's breach of the CBA resulted in the loss of those benefits. The remedy devised by the arbitrator was to make those employees whole, by placing them in the same status they held on the date of the sale and to require Boeing to provide any benefits the employees lost as a result of the sale and Boeing's breach of the agreement. That is a result that is plausibly within the contemplation of the parties, and certainly within the general framework of the CBA. Id. at 1164; Desert Palace, Inc. v. Local Joint Executive Board of Las Vegas, 679 F2d 789, 793 (9th Cir. 1982).

The position Boeing advocates is untenable and creates a "Catch 22" situation. Boeing wants the arbitrator's decision affirmed only as to the requirement than an affected employee seeking benefits apply first to the Plan Administrator. Boeing then argues that any decision of the Plan Administrator must be appealed to the district court as required by § 502 of ERISA, 29 U.S.C. §§ 1132(a)(1)(B), (e)(1). The result of that application, as Boeing well knows, will be that benefits are denied because the employee is no longer a "participant" or because the assets or liabilities have been transferred, both direct results of Boeing' breach. According to Boeing, that decision must be challenged in the district court, which will be required to affirm, since the decision would be correct. That would leave the employees with no effective remedy, a result that is wholly unreasonable and that leaves the arbitrator's decision illusory. The arbitrator's remedy placed the employees in the position they would have been in had Boeing not breached,

a solution that this court finds clearly contemplated by the CBA. Accordingly, Boeing's motion to confirm in part and vacate in part is denied. UAW's motion to confirm is granted.

## CONCLUSION

For the reasons explained above, Boeing's motion to confirm arbitrable award in part and vacate in part (Docket No. 1) is denied. UAW's motion (Docket No. 37) to confirm March 5, 2009 arbitration award, confirmed April 21, 2008 arbitration award and to dismiss Boeing's motion to confirm, is granted.

**ENTER:** **September 16, 2009**

_____
**Robert W. Gettleman**
**United States District Judge**